## MILES BRISTOW *v.* ADMINISTRATOR OF ISAAC ERWIN.

Where a receipt is signed with the name of a firm of country merchants by their clerk, who signs his own name immediately below the name of the firm without using the word "*by*" or "*per,*" it may be implied from circumstances, that the clerk signed the name of the firm as their agent.

An unliquidated demand cannot compensate one that is liquidated.

APPEAL from the District Court of Iberville, *Burk*, J. *J. J. Berry*, for plaintiff. *Deblieux* and *Taylor*, for defendant. The judgment of the court was pronounced by

PRESTON, J. The plaintiff sued for $120, the amount of a draft accepted by *Isaac Erwin*, deceased, due on the 1st of March, 1844; and for $380 09, the balance of a store account commencing in August, 1843, and ending in October, 1844. But it is evident by inspection of the account, that this balance is made by charging the draft and $9 60 interest upon it.

The defendant plead the receipt of the plaintiff's clerk for $550 in money, in compensation of any claim the plaintiff might establish against him. The receipt and signatures are in the hand writing of *Joseph Christy*. It was signed, *Bristow & Co.*, and under the name of the firm in the signature of *Joseph Christy*, the clerk. It was objected to the receipt, that *Christy* did not purport to have signed it for the firm, but as principal or security, and that the signature of the firm, not being genuine, was not binding upon them. The district court rejected it as evidence; and the defendant excepted.

It is proved, that *Christy* was, at the date of the receipt, the clerk of *Bristow & Co.*, and continued so until his death, some months afterwards. There is no suggestion that he was a man of bad character or capable of committing a forgery. His signing the name of *Bristow & Co.* to the receipt, was certainly signing it for them. Signing his own name below was to give the signature of

his principals authenticity to the extent of his moral and pecuniary responsibility. It certainly would have been more proper and conformable to usage to have inserted the word *by* or *per*, or other words showing expressly the agency of the clerk; but that was not essential. The agency may be implied from circumstances, as conclusive as though it had been expressed in the receipt.

*Bristow & Co.*, as appears by their petition, had dealings with *Erwin*. They held an accepted draft and claimed a store account against him. It does not appear that the clerk had any dealings with him, which alone tends to show that the money was received as agent for his employer, and not for him. They being country merchants, and he their clerk, indicates the same thing.

There is another circumstance which is conclusive. In the body of the receipt it was expressed, that $150 of the money should be applied to a judgment sold by *C. M. Driskill*; seven days afterwards an execution, issued on a judgment of *C. M. Driskill* against *Isaac Erwin*, was returned credited with this sum. The attorney of the plaintiff testifies, that a son of *Erwin* subsequently satisfied the balance of the judgment, deducting the $150 received by *Bristow* according to the receipt dated the 4th of January, 1844; and that it is his impression that the payment of the first $150 was received by *Bristow* from money in hand belonging to the defendant.

A transfer in writing of the judgment from *Driskill* to *Bristow & Co.* was made, but without date. It is clear, it was transferred before the receipt of the $150; because in the receipt it is expressed that $150 is to be applied to a judgment sold by *C. M. Driskill*. Therefore, the clerk received that part of the money from *Erwin* in payment of a judgment held by *Bristow & Co.* against him, and *Bristow*, in the final settlement of the judgment, ratified the receipt. The transfer of the judgment is fixed about the date of these transactions because it was made to the firm of *Bristow & Co.*, and this firm was dissolved in 1844, by the death of *Crane*, the partner, within eight days of the time the clerk, *Christy*, died.

We have no doubt, from all these circumstances, that *Bristow & Co.* appropriated the $150 of the money received by their clerk to the judgment they had purchased from *Driskill*, and kept the balance in extinguishment of their account against *Erwin*, including the accepted draft which they held; and we know of no rule of evidence which should have excluded the clerk's receipt in the name of the firm, in connection with all these circumstances to establish the true state of the claims of the parties. From this receipt and circumstances, we are satisfied the whole claim of the plaintiff has been extinguished by compensation or payment.

The claim of the defendant on account of boarding and clothing two servants of the plaintiff, was unliquidated, and therefore cannot be compensated against the draft and claims of the plaintiff, and are now prescribed.

These views of the case would show a small balance of about $20 in favor of the defendant; but the transactions of the parties are so ancient and the accounts of them kept so loosely, that we would be much inclined simply to render judgment for the defendant against the demands of the plaintiff, in order to close their litigation.

The receipt, however, having been excluded from the consideration of the jury, and it being possible that the plaintiff may have something to offer against it, in conformity to the uniform practice, we are compelled to remand the case, with directions to the district court to admit the receipt offered by the defendant in evidence.

BRISTOW     The judgment of the district court is reversed, at the costs of the plaintiff, and
*v.*
ERWIN.      the cause remanded for further proceedings according to the views we have
            expressed.